```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
                     HOUSTON DIVISION
```

| | |
|---|---|
| THOMAS LEONARD BELL, §<br>individually and as Executor §<br>of BELINDA G. BELL Estate, §<br>                                §<br>        Plaintiff,            §<br>                                §<br>v.                              §  CIVIL ACTION NO. H-07-0846<br>                                §<br>CURTIS G. HOLLOWAY, MEREDITH §<br>BROWN, MICHAEL CAVAZOS,      §<br>                                §<br>        Defendants.           § | |

## MEMORANDUM OPINION

Pending before the court[1] is Defendants' Motion to Dismiss (Docket Entry No. 12). The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** the motion.

### I. Case Background

This civil rights action was filed by Plaintiff[2] against three peace officers employed by the Metropolitan Transit Authority of Harris County ("Metro"). In his First Amended Claim, Plaintiff presented federal claims under 42 U.S.C. § 1981 ("Section 1981") and 42 U.S.C. § 1983 ("Section 1983") and state claims of false

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry No. 18.

[2] The only plaintiff named in Plaintiff's First Amended Complaint is Thomas Leonard Bell, albeit in dual capacities as himself individually and as executor of his deceased wife's estate. See Plaintiff's First Amended Complaint, Docket Entry No. 14. Plaintiff's deceased wife's estate is not identified as a plaintiff despite Plaintiff's assertion of a loss of consortium claim on behalf of his deceased wife. See id.

imprisonment and defamation.[3]  His allegations are based on the events of February 6 and 7, 2005.[4]  Taken directly from Plaintiff's First Amended Complaint, those events are recounted here.

While riding the Metro light rail on the evening of February 6, 2005, Plaintiff encountered Defendants Brown and Cavazos, who questioned him about an expired MetroRail ticket.[5]  Plaintiff, who was en route to visit his terminally ill wife at the hospital, "was not happy about the courtesy of the officers [and] asked to see their supervisors."[6]  Defendants Brown and Cavazos escorted Plaintiff to a light rail station where he spoke with Defendant Holloway.[7]  Plaintiff remained dissatisfied.[8]  When Plaintiff requested to see Defendant Holloway's supervisor, Defendant Holloway ordered Defendants Brown and Cavazos to arrest Plaintiff.[9]

Defendant Brown took Plaintiff to the detention center, where he was held without a pending charge until about 3 a.m. on February 7, 2005.[10]  At that time, a magistrate judge released Plaintiff for

---

[3]   See id.

[4]   See id. at ¶¶ 5-8.

[5]   See id. at ¶ 5.

[6]   Id. at ¶¶ 5, 6.

[7]   See id. at ¶ 6.

[8]   See id.

[9]   See id.

[10]  See id. at ¶¶ 7, 8.

2

the lack of a charge.[11] While Plaintiff was so engaged with the Metro officials, Plaintiff's wife was expecting him to arrive at the hospital.[12]

On February 7, 2006, Plaintiff filed a civil rights action in this court.[13] That case was dismissed on August 18, 2006, for failure of service of process.[14] Plaintiff did not challenge the dismissal of that case.[15]

More than thirteen months after the filing of Plaintiff's first lawsuit, he filed this lawsuit, which is substantively identical to his 2006 lawsuit.[16] Represented by the same attorney, Plaintiff filed this suit in March 2007; summons did not issue until June 12, 2007.[17]

On June 19, 2007, a private process server, hired by Plaintiff, received the summonses and complaints and took them to

---

[11] See id. at ¶ 8.

[12] See id. at ¶¶ 5, 8.

[13] See Bell v. Holloway, Civil Action No. H-06-0421, filed in the United States District Court for the Southern District of Texas on Feb. 7, 2006, Docket Entry No. 1, Plaintiff's Original Complaint.

[14] See id. at Docket Entry No. 9, Order of Dismissal.

[15] See id. at docket sheet.

[16] Compare id. at Docket Entry No. 1, Plaintiff's Original Complaint with Plaintiff's Original Complaint (in this case), Docket Entry No. 1.

[17] See Plaintiff's Original Complaint, Docket Entry No. 1; unnumbered docket entry, "Summons Issued" notation on June 12, 2007.

3

a Metro office.[18] A Metro attorney directed the process server to a different office, where someone guided her to the office of Clyde Goodnight, Jr., ("Goodnight").[19] Goodnight accepted and signed for the three packets of papers, all of which indicated prominently that they were federal summonses and complaints.[20] On the return of service form for each of the defendants, the process server checked the box indicating that each summons and complaint was "[s]erved personally upon the defendant," but noted by hand that the place served was "c/o Clyde W. Goodnight, Jr.-Litigation/Court Servicery [sic] Dept."[21]

According to Goodnight, he believed the papers to be subpoenas at the time that he accepted them.[22] He was authorized to accept subpoenas that required officers to appear in their capacities as Metro police in order to testify in traffic and criminal courts, but was not authorized to accept service of process for civil lawsuits.[23] Goodnight later realized that the papers were not

---

[18] See Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 15, Ex. 1 (unnumbered), Affidavit in Support of Service of Process, p. 1.

[19] See id.

[20] See id.

[21] Motion to Dismiss, Docket Entry No. 12, Ex. 5, Return of Service for Defendant Holloway; Ex. 6, Return of Service for Defendant Brown; Ex. 7, Return of Service for Defendant Cavazos.

[22] See id. at Ex. 4, Affidavit of Clyde Goodnight, ¶ 3.

[23] See id. at ¶ 2.

subpoenas.[24]  He delivered the papers to the office mailboxes of Defendants Brown and Cavazos and under the door of the office of Defendant Holloway.[25]  He sent e-mails to all three defendants to alert them about the papers.[26]  Defendants Brown, Cavazos, and Holloway found the summonses and complaints where Goodnight had left them.[27]

## II.  Dismissal Standard

Pursuant to the Federal Rules of Civil Procedure, the court is authorized to dismiss a civil action for insufficiency of service of process.  Fed. R. Civ. P. 12(b)(5); see also Kreimerman v. Casa Veerkamp, S.A. de C.V., 22 F.3d 634, 645 (5th Cir. 1994)("A district court . . . has broad discretion to dismiss an action for ineffective service of process. . . .").  Absent proper service of process, the court cannot exercise jurisdiction over a party named as a defendant.  Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999).

Dismissal of an action is also appropriate whenever the complaint, on its face, fails "to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss, the court should construe the allegations in

---

[24]  See id. at ¶ 3.

[25]  See id.

[26]  See id.

[27]  See Motion to Dismiss, Docket Entry No. 12, Ex. 1, Affidavit of Defendant Holloway, ¶ 2; Ex. 2, Affidavit of Defendant Brown, ¶ 2; Ex. 3, Affidavit of Defendant Cavazos, ¶ 2.

the complaint favorably to the pleader and accept as true all well-pleaded facts, but need "not strain to find inferences favorable to the plaintiff[]." Cornish v. Corr. Servs. Corp., 402 F.3d 545, 548-549 (5th Cir. 2005)(quoting Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 361 (5th Cir. 2004)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007)(internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

### III.  Analysis

Defendants challenge Plaintiff's lawsuit on two bases: 1) ineffective service; and 2) expiration of the limitations period. Because of the personal jurisdiction implications, the court begins with the question of effective service.

**A.  Service**

6

For individuals within the United States,[28] service may be effected by delivering a copy of the summons and complaint to the individual personally, to the individual's usual place of abode, or to that individual's authorized agent, or service may be effected in accordance with the state law of the state in which the district court sits or in which service occurs. Fed. R. Civ. P. 4(e). In general, Texas law allows authorized persons to serve the named defendant either by personal delivery or by registered or certified mail. Tex. R. Civ. P. 106(a). Actual notice does not satisfy the service requirements of Federal Rule of Civil Procedure 4. McGuire v. Sigma Coatings, Inc., 48 F.3d 902, 907 (5th Cir. 1995).

When service is challenged, the party responsible for service bears the burden of establishing its efficacy. Carimi v. Royal Caribbean Cruise Line, Inc., 959 F.2d 1344, 1346 (5th Cir. 1992); Sys. Signs Supplies v. U.S. Dep't of Justice, Wash. D.C., 903 F.2d 1011, 1013 (5th Cir. 1990). The plaintiff is able to meet this burden by producing the return of service, which can be accepted as prima facie evidence of how service was effected. O'Brien v. R.J. O'Brien & Assocs., Inc., 998 F.2d 1394, 1398 (7th Cir. 1993); Home-Stake Prod. Co. v. Talon Petroleum, C.A., 907 F.2d 1012, 1017 (10th Cir. 1990); Seal v. La., No. Civ.A. 05-629, 2005 WL 3543836, at *1

---

[28] As explained in the Order of Dismissal in Plaintiff's 2006 lawsuit, service of these three defendants is analyzed under Rule 4(e), which addresses the service of individuals within the United States, rather than under Rule 4(j), which addresses the service of governmental organizations. See Motion to Dismiss, Docket Entry No. 12, Ex. 9, Order of Dismissal, p. 2.

(E.D. La. Oct. 18, 2005) (unpublished); <u>Tinsley v. Comm'r of I.R.S.</u>, No. 396-CV-1769-P., 1998 WL 59481, at *3 (N.D. Tex. Feb. 9, 1998) (unpublished); <u>Croy v. Skinner</u>, 410 F. Supp. 117, 131 n.9 (N.D. Ga. 1976).

The summons and complaint must be served on each defendant within 120 days of filing the complaint. Fed. R. Civ. P. 4(m). Should the plaintiff fail to effect service within that time period, the court may dismiss the action without prejudice or may allow additional time for service. <u>Id.</u> However, upon a showing of good cause for the failure of service, the court shall extend the time for service. <u>Id.</u> Good cause is more than inadvertence, mistake of counsel, or ignorance of the rules. See <u>Sys. Signs Supplies</u>, 903 F.2d at 1013. The plaintiff must show excusable neglect, as well as establish good faith and a reasonable basis for not serving the summons and complaint within the time allowed by the rules. <u>Id.</u>

Defendants argue that Plaintiff did not serve them properly because the summonses and complaints were left at their workplace with an individual who did not have authority to accept service for them. Plaintiff responds that the process server followed the instructions of the individuals at Metro and had no reason to doubt Goodnight's authority and, in fact, had every reason to believe, based on Goodnight's representations, that he was authorized to accept service of process.

8

Plaintiff (implicitly) relies on the returns of service as prima facie evidence of effective service. However, the returns indicate both that service was executed to the defendants personally and that service was completed at their workplace via a third party to the lawsuit. The testimony of the process server and Goodnight confirms that the latter was the actual method of service. Under the rules, the only effective service via a third party at an individual's place of business depends on the third party being an authorized agent. See Fed. R. Civ. P. 4(e). Plaintiff has failed to counter Goodnight's asseveration that he was not an authorized agent for any of the three defendants. Service on none was valid.

In this case, the court finds that an extension of time for service is not warranted. This is so, despite the testimony of the process server that suggests that Goodnight misled her as to his authority to receive summonses and complaints for the defendants. Although the process server's testimony at least raises the question of whether good cause for the failure of service exists, it does not address all of the deficiencies of Plaintiff's complaint. In this case, effective service could not salvage Plaintiff's lawsuit because the limitations periods for all of his claims expired prior to the date on which he filed the case.[29]

---

[29] Additionally, the court notes that Plaintiff waited more than a year after his first lawsuit was dismissed (on the basis of ineffective service, no less) to refile an identical action. Then, he allowed three months to elapse before summonses were issued.

9

B. **Limitations**

   1. **Legal Authority**

Civil rights claims brought under Section 1983 are subject to the forum state's general statute of limitations for personal injuries, which, in this case, allows a two-year limitations period. Price v. City of San Antonio, Tex., 431 F.3d 890, 892 (5th Cir. 2005); see also Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a).

Claims arising under 42 U.S.C. § 1981 are governed by two separate limitations periods: two years if the right existed prior to December 1, 1990, and four years if the claim was made possible by a post-1990 enactment. See generally Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371, 382-83 (2004) (holding that causes of action arising under the 1991 amendments to Section 1981 are governed by the federal "catch-all" four-year statute of limitations, while claims arising under the original Section 1981 are governed by the forum state's personal injury statute of limitations); 28 U.S.C. § 1658 (allowing a four-year limitations period for causes of action arising under federal statutes enacted after December 1, 1990).

In 1991, Congress added text to Section 1981, including, most importantly, text that defines the phrase "make and enforce contracts" to include the "performance, modification, and termination of contracts, and the enjoyment of all benefits,

10

privileges, terms and conditions of the contractual relationship."[30] 42 U.S.C. § 1981(b). This revision came in response to the United States Supreme Court's interpretation of Section 1981 in Patterson v. McLean Credit Union, 491 U.S. 164, 176-80 (1989).

In Patterson, the Supreme Court decided that the right "to make . . . contracts," as that phrase was used in Section 1981, "extend[ed] only to the formation of a contract, . . . not to problems that may arise later from the conditions of continuing employment." Id. at 176. The Supreme Court also interpreted the right "to . . . enforce contracts" stating that the enforcement right:

> embrace[d] protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race. In this respect, it prohibits discrimination that infects the legal process in ways that prevent one from enforcing

---

[30] Section 1981 originally read:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to not other.

Section 101 of the Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071, which modified Section 1981, reads:

Section 1977 of the Revised Statutes (42 U.S.C. § 1981) is amended--
"(1) by inserting '(a)' before 'All persons within'; and
"(2) by adding at the end the following new subsections:
"(b) For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
"(c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."

>     contract rights, by reason of his or her race, and this
>     is so whether this discrimination is attributed to a
>     statute or simply to existing practices. It also covers
>     wholly private efforts to impeded access to the courts or
>     obstruct nonjudicial methods of adjudicating disputes
>     about the force of binding obligations, as well as
>     discrimination by private entities . . . in enforcing the
>     terms of a contract.

Id. at 177.

The Patterson case focused on the application of the then current Section 1981 to an employer's post-contract-formation conduct, but held more generally that Section 1981 "d[id] not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." Id. at 171; see also Rivers v. Roadway Express, Inc., 511 U.S. 298, 301 (1994); Harris v. Allstate Ins. Co., 300 F.3d 1183, 1186 (10th Cir. 2002). The 1991 revision of Section 1981 expanded the statute's prohibition against discrimination "to all phases and incidents of the contractual relationship, including discriminatory contract terminations." Rivers, 511 U.S. at 302.

The statute of limitations for a false imprisonment claim is also two years. See Tex. Civ. Prac. & Rem. Code § 16.003(a); White v. Cole, 880 S.W.2d 292, 295 (Tex. App.–Beaumont 1994, writ denied). For defamation claims, the limitations period is only one year. Tex. Civ. Prac. & Rem. Code § 16.002(a).

### 2. Discussion

Defendants argue that none of Plaintiff's causes of action remained viable at the time that his current lawsuit was filed in

March of this year because the events took place in February of 2005. Plaintiff does not contend that the state law claims are entitled to a longer period of limitations or that the limitations period for any claim was tolled.[31] Instead, Plaintiff focuses solely on the appropriate length of the limitations periods for Section 1983 and Section 1981 causes of action.

Plaintiff argues that longer limitations periods should apply to his Section 1983 action based on the nature of the particular wrongs alleged. In other words, Plaintiff asserts, his "allegations fall under (a) the two-year personal injury limitations, (b) the four-year breach of contract limitations, and (c) the four-year residual limitations."[32] Plaintiff misunderstands the law. It is well-established that claims under Section 1983 must be brought within two years of the date that the cause of action accrues. See, e.g., Price, 431 F.3d at 892 (stating that the limitations period for Section 1983 claims is determined by the *general* statute of limitations governing personal injuries in the forum state); Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir. 2001)(same).

---

[31] Citing Clary Corp. v. Smith, 949 S.W.2d 452, 459 (Tex. App.-Fort Worth 1997), Defendants point out that, in a situation where a cause of action is dismissed and refiled, limitations are calculated from the time the cause of action accrued to the time that the claim is refiled. Motion to Dismiss, Docket Entry No. 12, p. 8. Plaintiff does not respond in disagreement to the application of that case to his current lawsuit.

[32] Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 15, p. 3 (unnumbered).

13

With regard to his Section 1981 claim, Plaintiff argues that the claim is governed by the four-year limitations period of 28 U.S.C. § 1658 because it is based on rights that originated when Congress revised the statute in 1991. As suggested by Plaintiff's contention, the issue for the court to decide is whether Plaintiff's claim arose under the amended or the unamended version of Section 1981.

Plaintiff's live pleading cites to all three subsections of Section 1981, but provides very little factual detail as to the nature of his Section 1981 complaint. The amended complaint alleges the violation of "his right to be protected against impairment under color of state law to have the same right as white citizens to the 'full and equal benefit of all laws and proceedings for the security of his person' and to 'be subject to like punishment, pains' as white citizens, under 42 U.S.C. § 1981 (a) & (c)" and "to make and enforce contracts and to enjoy all benefits, privileges, terms, and conditions of the contractual relationship pursuant to 42 U.S.C. § 1981 (a), (b), & (c)."[33] Other than reciting the words of the statute itself, Plaintiff alludes to his rider's contract with MetroRail and states that Defendants Brown and Cavazos "questioned" Plaintiff "for an expired MetroRail

---

[33] Plaintiff's First Amended Complaint, Docket Entry No. 14, ¶¶ 9, 10.

ticket" and that Plaintiff's displeasure with the courtesy of all three defendants led to his arrest without a charge.[34]

As the court understands Plaintiff's allegations, Defendants interfered with his contractual right to grieve how the officers treated him as a paying rider of Metro, in other words, to enforce established contract obligations. His allegations fit squarely into the Supreme Court's pre-revision interpretation of Section 1981's right "to . . . enforce contracts."[35] See Patterson, 491 U.S. at 177. Such a claim is subject to the two-year limitations period.

Plaintiff's Sections 1983 and 1981 causes of action (as well as his state law claims[36]) are barred by limitations.

## IV. Conclusion

Based on the foregoing, the court **GRANTS** Defendants' Motion to Dismiss.

---

[34] Id. at ¶¶ 5, 6, 10. Plaintiff's response to the motion to dismiss sheds little light on the factual basis for his claim, mentioning only that Defendants, as employees of Metro, prevented Plaintiff, as a Metro customer, from enjoying the benefits of his contract. Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 15, p. 1 n.1.

[35] The court notes that Plaintiff does not allege that he actually possessed a valid MetroRail ticket, which calls into question whether he had any contractual right to enforce in the first instance.

[36] Despite having dismissed the federal claims against Defendants, the court has chosen to retain jurisdiction over the pending state law claims in order to address the merits of those claims. See 28 U.S.C. § 1367(c) (allowing the district court the discretion not to exercise jurisdiction over state law claims when it has dismissed all claims over which it had original jurisdiction); McCoy v. City of Shreveport, 492 F.3d 551, 563 (5th Cir. 2007)(addressing the merits of a state law claim despite the dismissal of all federal claims).

**SIGNED** in Houston, Texas, this 31st day of December, 2007.

NANCY K. JOHNSON
UNITED STATES MAGISTRATE JUDGE

16